# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN H. GREGORY & PEGGY GREGORY,** | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO. 4:04-2438** |
| | : | |
| v. | : | **(JONES, D.J.)** |
| | : | **(MANNION, M.J.)** |
| **TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC.,** | : | |
| | : | |
| Defendants | : | |

| | | |
|---|---|---|
| **FRANK R. DAMIANO & GWENDOLYN DAMIANO,** | : | |
| | : | |
| Plaintiffs | : | **CIVIL ACTION NO. 4:04-2439** |
| | : | |
| v. | : | |
| | : | |
| **TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC.,** | : | |
| | : | |
| Defendants | : | |

| | | |
|---|---|---|
| **PORNCHAI JIEMJITPOLCHAI,** | : | |
| | : | |
| Plaintiff | : | **CIVIL ACTION NO 4:04-2440** |
| | : | |
| v. | : | |
| | : | |
| **TIMOTHY J. SEWELL & K.A.M. TRUCKING, INC.,** | : | |
| | : | |
| Defendants | | |

## REPORT AND RECOMMENDATION

Before the court are the defendants' motions for summary judgment for dismissal of the plaintiffs' punitive damages claims. Because Civil Action Nos. 04-2438, 04-2439, and 04-2440 arose from the same factual transaction, the same defendants defend each action, and the parties' filings in each action are common to all the actions, the court will address the defendants' motions in a single report. For the following reasons, the court recommends that the motions be denied in part and granted in part.

I. **Procedural History**

The plaintiffs commenced the actions on November 9, 2004 by filing their complaints. (Common Doc. No. 1.[1]) The complaint raises seven counts for which relief is sought, three of which are relevant to the instant motions. Count four of the complaints seeks punitive damages against defendant Sewell. Count five of the complaints seeks punitive damages against defendant K.A.M. Trucking. Count six of the complaint seeks punitive damages on a theory of vicarious liability against defendant K.A.M. Trucking. After waiving service in March 2005 (Common Doc. Nos. 5 & 6), the defendants answered the complaint on August 19, 2005 (Common Doc. No. 13.)

On November 7, 2005, the defendants filed the instant motions for

---

[1]Because the filings in each case are common to all of the cases, the court cites them as "Common Doc. No." rather than cite separately each case.

summary judgment with supporting briefs and exhibits. (Common Doc. No. 16.) The plaintiffs filed briefs in opposition and exhibits on December 2, 2005. (Common Doc. No. 19.) The defendants filed a reply brief and exhibits on December 15, 2005. (Common Doc. No. 21.) By leave of court, the plaintiffs filed a sur-reply on December 29, 2005, and exhibits on January 4, 2006. (Common Doc. Nos. 22, 23, 24, & 25.) By leave of court, the defendants filed a sur-sur-reply and exhibits on January 30, 2006. (Common Doc. Nos. 26, 27, & 29.)

## II.   **Factual Background**

Based on the submissions by the parties, the court has compiled the following facts underlying the three actions; where appropriate, the court notes events that are controverted by the parties. The accident underlying the actions occurred late on the night of March 2, 2003. Defendant Sewell, a tractor-trailer driver for defendant K.A.M. Trucking,[2] was heading south on Interstate 81 in Harford Township, Susquehanna County, Pennsylvania. It had snowed off and on as defendant Sewell drove from Ontario to southern New York. By the time defendant Sewell entered Pennsylvania, the snow had

---

[2] Defendant Sewell was a trained driver with over thirty years' professional experience who was familiar with safe driving techniques, including provisions of Canadian and U.S. law and defendant K.A.M. Trucking's driving manual and other safety training, and the dangers of winter driving, including wet ice, black ice, and jack-knifing on slippery surfaces. (Common Doc. Nos. 16 ex. E, 19, & 20 exs. E, O, & P.)

stopped. Defendant Sewell believed that Interstate 81 was merely wet and not icy, though the temperature was below freezing. He further believed that the roadway had been salted. The plaintiffs argue that the roadway was icy and that defendant Sewell should have been aware of the hazard. A salt truck salted the right lane of the roadway at the point of the accident from which the actions arose immediately prior to the accident. (Common Doc. Nos. 16 ex. C & 20 exs. A, B, & N.)

Plaintiff Jiemjitpolchai had been in an automobile accident on Interstate 81 in Harford Township, and he and the operator of the other vehicle were parked facing north on the verge of the southbound lanes of traffic. They sat in the other driver's car. Their hazard lights were flashing. Plaintiffs John H. Gregory and Frank R. Damiano, Pennsylvania State Police troopers, responded to the accident. The troopers parked their patrol car, with its lights flashing, and investigated the accident. From north to south, the cars were parked in the following order: the troopers' patrol car, plaintiff Jiemjitpolchai's car, and the other car. (Common Doc. Nos. 1 & 21 ex. A.)

Defendant Sewell approached the section of Interstate 81 where the plaintiffs were parked. Approximately one mile north of where the plaintiffs were parked, defendant Sewell passed a motor vehicle accident that closed the right lane of traffic and forced defendant Sewell to pass into the left lane. Defendant Sewell claims the accident was not indicative of hazardous weather conditions, and he proceeded through the area at fifty miles per hour.

4

The plaintiffs claim that other traffic at the accident scene was traveling at a much-reduced speed, from between five and ten miles per hour or twenty and twenty-five miles per hour, indicating that defendant Sewell's speed was excessive under the conditions. (Common Doc. Nos. 1, 16 & ex. C, 19, & 20 exs. A, B, D, J, & K.)

According to the plaintiffs, as defendant Sewell neared the plaintiffs, at a point where the interstate curved downhill, he was driving in the left, or passing, lane in excess of a safe speed in light of the weather and road conditions–between fifty miles per hour according to defendant Sewell and sixty-five and seventy miles per hour according to witnesses and the plaintiffs' expert. The plaintiffs argue that the roadway was slippery because of ice and defendant Sewell improperly applied both of his brakes in contravention of sound operating principles because of the danger of jack-knifing. The plaintiffs' expert believes that defendant Sewell was driving recklessly indifferently at up to three times the safe speed limit. According to the defendants, defendant Sewell was driving approximately fifty miles per hour in the right lane around the curve when he noticed the patrol car's flashing lights. They claim other vehicles, including tractor trailers, passed defendant Sewell. They further claim that, when defendant Sewell saw the patrol car's lights, he moved into the passing lane and attempted to slow down. (Common Doc. Nos. 1, 16 & ex. C, 19, 20 exs. A, B, E, J, & N, & 24.)

Apparently hitting black ice, defendant Sewell's tractor trailer jack-knifed

and careened towards the verge, where the trailer collided with the patrol car, in which sat the two troopers. The tractor trailer began a chain reaction in which the tractor trailer and the patrol car continued forward to hit plaintiff Jiemjitpolchai's car and then the other car, in which sat plaintiff Jiemjitpolchai and the other driver. The three plaintiffs were severely injured. The plaintiffs claim that, after the accident, defendant Sewell pulled to the side of the highway south of the plaintiffs' cars. According to them, a visual inspection of his tractor trailer led defendant Sewell to suspect he had struck the police car, but he remained in his cab instead of offering assistance and denied hitting another vehicle to a Pennsylvania Department of Transportation salt truck driver who approached him. According to defendant Sewell, the driver told him to wait in his cab. (Common Doc. Nos. 1, 16, 19, 20 exs. B, E, G, H, & I, & 29 ex. B.)

The plaintiffs contend that defendant Sewell was driving negligently, carelessly, and grossly recklessly. They argue that defendant Sewell caused the accident by ignoring several signs of dangerous road conditions, including a wet and icy roadway, an accident north of the accident defendant Sewell allegedly caused, salt trucks, weather-disabled and slow-driving vehicles, weather reports, and a disregard for safe driving principles. (Common Doc. Nos. 1, 19, & 24.) According to the state trooper who spoke to defendant Sewell at the scene of the accident, defendant Sewell was cooperative, apparently sober, and "a gentleman." (Common Doc. No. 16 ex. D.)

6

Defendant Sewell was charged by the State Police with and pled guilty to violating 75 PA. CONS. STAT. ANN. § 3361 (driving at an unsafe speed) and 75 PA. CONS. STAT. ANN. § 3714 (driving carelessly), both summary offenses. (Common Doc. Nos. 1, 16, & 20 exs. M & R.)

In the instant motions, the defendants argue that, under the standard for summary judgment, the facts show that the plaintiffs are not entitled to punitive damages as a matter of Pennsylvania law because the defendants' conduct with respect to the accident was not outrageous by reason of evil motive or reckless indifference and he lacked a subjective appreciation of the risk of harm. They contend that the incident was simply an accident that cannot support the award of punitive damages. They further argue that defendant K.A.M. Trucking cannot be held vicariously liable for punitive damages because defendant Sewell's predicative behavior was not outrageous and does not suffice under Pennsylvania's standard for the vicarious imposition of punitive damages. (Common Doc. Nos. 16, 17, 21, & 29.)

In reply, the plaintiffs reiterate the arguments in their complaints that defendant Sewell's behavior was outrageous and supports the award of punitive damages because defendant Sewell was aware of hazardous road conditions and disregarded them. They argue that defendant K.A.M. Trucking is liable for punitive damages because its conduct in allowing defendant Sewell to drive for them was outrageous. They also argue that defendant

K.A.M. Trucking is vicariously liable as defendant Sewell's employer for his allegedly outrageous conduct on the night of the accident.  (Common Doc. Nos. 1, 19, & 24.)

### III.  Discussion

####   A.  Standard of Review

Summary judgment is appropriate when the pleadings and any supporting materials, such as affidavits and other documentation, show that there are no material issues of fact to be resolved and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Furthermore, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324; Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990); Pastore v. Bell Tel. Co. of Pennsylvania, 24 F.3d 508, 511 (3d Cir. 1994) (quoting Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992)).  The

party moving for summary judgment bears the burden of showing the absence of a genuine issue of any material fact, but the nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in the pleadings. Celotex Corp., 477 U.S. at 323, 325; Anderson v. Liberty Lobby, Inc., 477 U.S. 248-52 (1986); Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).

To determine whether the nonmoving party has met its burden, the court must focus on both the genuineness and the materiality of the factual issues raised by the nonmovant.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 242, 247-48 (emphasis in original).  A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. Anderson, 477 U.S. at 250.  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Anderson, 477 U.S. at 248.   If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). All inferences, however, "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence

9

contradicts the movant's, then the non-movant's must be taken as true." Pastore, 24 F.3d at 512 (quoting Big Apple BMW, Inc. v. BMW of N. America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)).

### B.   Standard for Punitive Damages

#### 1.   Direct Liability for Punitive Damages

A federal court sitting in diversity must apply the substantive law of the state in which it sits. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 416 (1987) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)). A state law is substantive if its application would determine the outcome of the claim. Id. (citing Guar. Trust Co. v. York, 326 U.S. 99 (1945)). But the outcome-determinative test is not a mechanical application and is not used where state substantive law would encourage forum shopping or lead to the "inequitable administration of the laws." Id. (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)). Here, it is clear that Pennsylvania's law governing punitive damages is substantive because it will determine the outcome of the plaintiffs' punitive damages claim. It is also clear that the application of Pennsylvania's law neither encourages forum shopping nor is inequitable because the factual predicate to the suit occurred in this district.

In Pennsylvania, it is settled that "punitive damages are an 'extreme remedy' available in only the most exceptional matters." Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (quoting Martin v. Johns-Manville

Corp., 494 A.2d 1088, 1098 n.14 (Pa. 1985), overruled on other grounds by Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800 (Pa. 1989)); Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 760 (Pa. 2005).  The award of punitive damages is restricted because their purpose is limited to punishing and deterring outrageous conduct.  Hutchinson, 870 A.2d at 770 (citing Kirkbride, 555 A.2d at 803; RESTATEMENT (SECOND) OF TORTS § 908(1) (1979)).  Punitive damages are an "additional punishment" for "particularly egregious" conduct.  Phillips, 883 A.2d at 446.

Adopting RESTATEMENT (SECOND) OF TORTS § 908(2), the Commonwealth's Supreme Court has held that punitive damages may only be awarded for "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  Hutchinson, 870 A.2d at 770 (quoting Feld v. Merriam, 506 Pa. 383, 485 A.2d 742, 747 (1984)).  In assessing whether this high threshold is satisfied, the finder of fact must examine the defendant's state of mind; the defendant must have acted "willful[ly], wanton[ly,] or reckless[ly]" to warrant punitive damages.  Id.; see Feld, 485 A.2d at 748 ("The state of mind of the actor is vital.  The act, or the failure to act, must be intentional, reckless or malicious.").  Defining "reckless indifference," the Pennsylvania Supreme Court held that "an appreciation of the risk [of harm] is a necessary element of the mental state required for the imposition of [punitive] damages."  Id. at 771 (quoting Martin, 494 A.2d at 1097 n.12) (bracketed additions in original).  The defendant must

11

consciously disregard or be indifferent to "the high degree of risk," of which he is or ought to be aware, that his behavior will cause physical harm to another. Id. (citing Martin, 494 A.2d at 1097; RESTATEMENT (SECOND) OF TORTS § 500); see Phillips, 883 A.2d at 445 ("A defendant acts recklessly when 'his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent.'") (quoting Hutchinson, 870 A.2d at 771 (quoting RESTATEMENT (SECOND) OF TORTS § 500)) (bracketed addition in original); see also Burke v. Maassen, 904 F.2d 178, 182 (3d Cir. 1990)[3] ("Martin requires the more culpable mental state of conscious indifference to another's safety as the test for 'reckless indifference' under Restatement § 908. There must be some evidence that the person actually realized the risk and acted in conscious disregard or indifference to it.") (emphasis in original).

In consequence of the state Supreme Court's jurisprudence, claims sounding in negligence or gross negligence do not support awards of punitive damages because the defendant lacks a culpable state of mind. Phillips, 883 A.2d at 445-46. "Punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and

---

[3] When the Third Circuit handed down Burke, Pennsylvania's jurisprudence on punitive damages was somewhat unsettled. Martin, the leading Supreme Court case at that time, was a plurality opinion, although the Superior Court followed its reasoning. The Third Circuit correctly opined that the Supreme Court would adopt the reasoning in Martin. Burke, 904 F.2d at 182-83.

errors of judgment." Martin, 494 A.2d at 1097 (citing RESTATEMENT (SECOND) OF TORTS § 908 cmt. b).  Rather, in prosecuting a negligence claim, a plaintiff bears an "additional burden" of proving the defendant's culpability by reason of intent to harm or reckless indifference.  Hutchinson, 870 A.2d at 772; see Phillips, 883 A.2d at 446 ("What is clear from [the Pennsylvania Supreme Court's jurisprudence] is that there is a distinction between negligence and punitive damages, with a plaintiff being required to meet a far lesser burden to establish a negligence claim than that which is imposed in connection with a punitive damages claim.").

### 2.      Vicarious Liability for Punitive Damages

Rejecting RESTATEMENT (SECOND) OF TORTS § 909 (1977), which limits vicarious liability for punitive damages to situations where the employer knew of or authorized the employee's tort, Pennsylvania has instead followed the less restrictive traditional common law of vicarious liability, which provides that employers may be held vicariously liable for punitive damages because of the acts of its employee within the scope of the employee's authority.[4]  Shiner v. Moriarty, 706 A.2d 1228, 1240 (Pa.Super.), appeal denied, 729 A.2d 1130

---

[4] The defendants in their motions (Common Doc. No. 16) argue that the Pennsylvania Supreme Court in Funk v. Kerbaugh, 70 A. 953 (Pa. 1908), adopted RESTATEMENT (SECOND) OF TORTS § 909, but then state that the state "courts have refused to adopt" § 909.  This court need not attempt to reconcile the defendants' non sequitur because its own review of Pennsylvania decisions makes clear that the Commonwealth has not adopted § 909.

(Pa. 1998); <u>Dean Witter Reynolds, Inc. v. Genteel</u>, 499 A.2d 637, 643 (Pa.Super. 1985), <u>appeal denied</u>, 523 A.2d 346 (Pa. 1987) (citing <u>Funk</u>, 70 A. 953,954; <u>Philadelphia Traction Co. v. Orbann</u>, 12 A. 816 (Pa. 1888); <u>Lake Shore & Michigan S. Ry. Co. v. Rosenzweig</u>, 6 A. 545 (Pa. 1886); <u>Delahanty v. First Pennsylvania Bank, N.A.</u>, 464 A.2d 1243 (1983); <u>Hannigan v. S. Klein's Dep't Store</u>, 371 A.2d 872, <u>aff'g per curiam</u> 1 Pa. D & C 3d 339 (1976); <u>Gerlach v. Pittsburgh Rys. Co.</u>, 94 Pa.Super. 121 (1928)); <u>see Chuy v. Philadelphia Eagles Football Club</u>, 559 F.2d 1265, 1278 (3d Cir. 1979); <u>Skeels v. Universal C. I. T. Credit Corp.</u>, 335 F.2d 846, 851-52 (3d Cir. 1964); <u>see also</u> <u>Shiner</u>, 706 A.2d at 1240 (citing <u>Philadelphia Traction Co.</u>, 12 A. at 818) ("[T]here is no requirement that an agent commit a tortious act at the direction of his principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him.").[5] But the courts, recognizing the breadth of the common law, have stated that it must only be applied with great caution in cases where the employer did not know of or authorize the employee's tortious conduct. <u>Funk</u>, 70 A. at 954 ("Too great caution cannot be exercised in permitting the recovery of punitive damages for the willful or reckless act of a servant not authorized or approved by the master. The rule

---

[5] In <u>Carpenter v. Dizio</u>, 506 F.Supp. 1117 (D.C. Pa. 1981), <u>aff'd</u>, 673 F.2d 1298 (3d Cir. 1982), the district court applied the rule of vicarious liability in RESTATEMENT (SECOND) OF TORTS § 909 and found that deviation was allowed only in certain exceptional circumstances. As discussed above, an analysis of the Commonwealth's precedents, as well as the Third Circuit's review of state law, makes clear that the district court in <u>Carpenter</u> misread Pennsylvania's law.

that permits a recovery in such cases is a harsh one, and the plainest principles of justice call for caution in its application.") (citing Philadelphia Traction Co., 12 A. 816); see Dean Witter Reynolds, Inc., 499 A.2d at 643; see also Chuy, 595 F.2d at 1279; Skeels, 335 F.2d at 852.

The meaning of "great caution" has apparently not been addressed by the Commonwealth's courts. However, the Third Circuit has interpreted "great caution" to mean "that the conduct of the agent who inflicts the injury complained of must be rather clearly outrageous to justify the vicarious imposition of exemplary damages upon the principal." Skeels, 335 F.2d at 852 (citing Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963)). The defendants argue that Skeels establishes a standard of "clearly outrageous" that is higher than the simple outrageous standard for direct punitive damages. (Common Doc. No. 21.) The court disagrees and finds that the standard for both direct and vicarious liability for punitive damages is ordinary outrageousness.

In reaching its conclusion in Skeels, the Third Circuit relied on Chambers, a brief decision that did not address vicarious liability in which the Pennsylvania Supreme Court discussed in one paragraph the standard for punitive damages:

> Appellant's final contention is that there was no evidence sustaining the award of punitive damages. "'Punitive damages' are damages, other than compensation or nominal damages, awarded against a person to punish him for his outrageous conduct." Restatement of Torts, Sec. 908(1). Comment b. to the above section states that "punitive damages are awarded only for

15

> outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." In Hughes v. Babcock, 349 Pa. 475, 37 A.2d 551 (1944), we said that exemplary damages must be based on "'malicious', 'wanton', 'reckless', 'willful', or 'oppressive' conduct on the part of defendant". In determining whether punitive damages should be awarded, the act itself together with all the circumstances including the motive of the wrongdoer and the relations between the parties should be considered. Restatement, Torts, Sec. 908, comment e; Hughes v. Babcock, supra.

Chambers, 192 A.2d at 358 (grammar as in original). The Supreme Court's analysis in Chambers merely states Pennsylvania law. There is nothing in its opinion from which the Third Circuit could infer a separate "clearly outrageous" standard. Rather, it seems apparent that the Third Circuit was reiterating the state's already high punitive damage standard. The qualifying language, which is "rather clearly," not "clearly" as quoted by the defendants, appears logically to be a descriptive phrase meant to emphasize that only conduct by an employee that is outrageous can justify the imposition of punitive damages. Thus, the court concludes that the Third Circuit has not announced a second, higher standard for vicarious liability than that for direct liability. Indeed, because a federal court sitting in diversity is bound by the state's substantive law, it would be impossible for the Court of Appeals to deduce a standard that the state courts have never announced. Under Pennsylvania law, an employer is vicariously liable for punitive damages where an employee is directly liable for punitive damages.

### 3. Application

In this case, the court finds that there is a genuine issue of material fact regarding defendant Sewell's culpability, and consequently defendant K.A.M. Trucking's vicarious liability, for punitive damages, and that the defendants' motion for summary judgment in respect of the plaintiffs' claims for punitive damages in counts four and six should accordingly be denied. Having reviewed the entire record submitted by the parties and drawing any inferences and resolving any controverted evidence in favor of the plaintiffs, the nonmovants here, the court finds that a reasonable fact finder could determine that defendant Sewell's conduct on March 2, 2003, was recklessly indifferent.[6]

The parties do not dispute that defendant Sewell had significant experience and training in driving tractor trailers. He was familiar with driving in inclement weather, the special dangers posed by such weather to tractor trailers, and the appropriate remedies to ensure safety. They do not dispute that the weather immediately prior to the accident in this case was inclement. However, the parties dispute whether the weather was icy or merely wet such that defendant Sewell must have recognized the risk of black ice. They dispute whether defendant Sewell was speeding excessively in light of the road conditions. They dispute whether there were sufficient indicia of

---

[6] Neither party seriously contends that the evil motive prong of the punitive damages standard is pertinent here.

dangerous road conditions that ought to have alerted defendant Sewell to the risk of driving as he was.

It is not the court's task here to weigh the conflicting evidence, but it is the court's task to evaluate whether the conflict presented by that evidence is genuine and material. The court finds it is. It would not be unreasonable for a jury to find that defendant Sewell, with his experience and training, consciously appreciated the risk of harm from driving fifty or sixty to sixty-five miles per hour on a freezing night that had seen snow fall and perhaps melt and freeze and consciously disregarded or was indifferent to that risk. The court recognizes that the plaintiffs' burden in proving punitive damages is high–higher than their burden in proving ordinary negligence. But if a jury were to credit the plaintiffs' arguments and evidence over the defendants' arguments and evidence, it could support a finding of fact that defendant Sewell's conduct was outrageous, satisfying the higher burden necessary to allow the plaintiffs to receive punitive damages. If the jury found that defendant Sewell's conduct was outrageous, then defendant K.A.M. Trucking would likewise be vicariously liable for punitive damages. Therefore, the court recommends that the defendants' motion for summary judgment be denied with respect to the plaintiffs' claims in count four, seeking punitive damages from defendant Sewell, and count six, seeking punitive damages from defendant K.A.M. Trucking on a theory of vicarious liability.

However, the court finds that defendant K.A.M. Trucking cannot be held

directly liable for punitive damages. Pennsylvania law requires that a defendant have a conscious appreciation of the risk of harm he creates by outrageous behavior. A defendant cannot consciously appreciate the risk of harm in a situation at which he is not present and of whose risky conditions he is not immediately aware. Had defendant K.A.M. Trucking had reason to believe that defendant Sewell was a reckless or dangerous driver whose conduct created a risk of harm to others, it might be found liable for punitive damages. However, that is not the case here. The court simply cannot find outrageous, defendant K.A.M. Trucking's conduct in employing defendant Sewell, a driver with many years of experience, including for defendant K.A.M. Trucking before the accident at issue in the instant suits. There was no risk of harm to the plaintiffs that defendant K.A.M. Trucking could have conceivably consciously appreciated when it hired defendant Sewell or had him drive on Interstate 81 on March 2, 2003. Defendant K.A.M. Trucking's culpability does not meet the high standard necessary to allow the award of punitive damages under Pennsylvania law. On the record before it, the court cannot find a genuine issue of material fact as to defendant K.A.M. Trucking's vicarious liability for punitive damages. Accordingly, the court recommends that the defendants' motion for summary judgment be granted with respect to the plaintiffs' claims in count five, seeking direct punitive damages from defendant K.A.M. Trucking.

**IV.  Conclusion**

On the basis of the foregoing, **IT IS RECOMMENDED THAT**:

(1). defendant Sewell's and defendant K.A.M. Trucking's motions for summary judgment with respect to the plaintiffs' claims for punitive damages (Civ. No. 04-2438 Doc. No. 16, Civ. No. 04-2439 Doc. No. 16, & Civ. No. 04-2440 Doc. No. 16) be:

   (A). **DENIED** with respect to counts four and six; and

   (B). **GRANTED** with respect to count five; and plaintiffs Gregory's, Damiano's, and Jiemjitpolchai's fifth count in the complaints (Civ. No. 04-2438 Doc. No. 1, Civ. No. 04-2439 Doc. No. 1, & Civ. No. 04-2440 Doc. No. 1) be **DISMISSED**.

(2). The case be set down for trial, on the remaining counts, at the convenience of the court.

S/ Malachy E. Mannion  
**MALACHY E. MANNION**  
United States Magistrate Judge

Date: August 23, 2006  
O:\shared\REPORTS\2004 Reports\04-2438.01.wpd